Common Pleas Court for Hamilton County.

EVERS ET AL V. WILLIAMS, ADMR.

Decided November 20, 1931.

*John C. Rogers, William C. Groh* and *H. J. Appling,* for plaintiff.

*A. L. Herrlinger, Harry J. Wernke,* and *Michael G. Heintz,* for defendants.

MORROW, J.

Henry H. Evers died before his employer, Charles J. Ryling, who left a will containing the following item:

"(Iten 3.)   I give and devise to Henry H. Evers, my bookkeeper, and his heirs forever, my three houses Nos. 525, 527 and 529 Findlay street, Cincinnati, Ohio, together with the lots of land upon which they are situated, with the privileges and purtenances to the same belonging."

Ryling and Evers were not related.

The long established rule or principle is that:

"A devise, or legacy, lapses by the death of the devisee, or legatee, in the lifetime of the testator."   See *Davis Heirs* v. *Taul,* 6 Dana, Kentucky, 52.

This principle, however, has been modified in Ohio by the so-called "Statute against Lapses," Section 10581, General Code, but only to the extent of exempting from its operation the issue of a "child or other relative," (of the testator,) who was dead at the time the will was made, or dies thereafter leaving issue surviving the testator.

In this case, therefore, we hold that a devise to "Henry H. Evers, and his heirs forever" is the devise of a fee simple estate in the property sought to be given, but Evers' death before the testator's death caused the legacy to lapse and the heirs of Evers got nothing by the instrument.

As stated in *Rea, Excr.,* v. *Griffin,* 21 Nisi Prius (N.S.), 129, at page 136, the words "heirs" is a word of limitation, and not of substitution. See also *Wood, Admr.* v. *Anna M. Seaver,* 158 Mass., 411, 33 N. E., 587; also *Brison* v. *Holbrook, etc.,* 159 Mass., 280; *Kimball* v. *Story,* 108 Mass., 382; *Horton* v. *Earle,* 162 Mass., 448; and other cases cited in 40 Cyc. 1925, which states the general rule above quoted. See also Rood on Wills (2nd Ed.) Sec. 668, p. 633, 224 Mich. 658, 195 N. W. 430. Alexander "Commentaries on Wills," Vol. II, Sec. 774, page 1121.

It is necessary to set forth the history of Charles J. Ryling estate. On June 13, 1929, the administrator with the will annexed of the Ryling estate, and the trustee named in the will, filed an action to construe the will in this court. They were in doubt as to the true construction of the will, especially of the third clause of item 4.

The petition was filed June 13, 1929. Henry H. Evers was made a party defendant, and a year after the death of Ryling, the court in this case, by entry, made the heirs of Henry H. Evers new parties defendant, stating:

"It appearing to the Court that Henry H. Evers is deceased."

There is no other reference to the death of Henry H. Evers in the record of the will construction case, and had nothing to indicate therefore that Judge Struble had any intimation of the death of Henry H. Evers before

the death of Ryling, and that the Evers' devise lapsed.

In short, the court was asked to construe the will devising property to Henry H. Evers, named as party defendant, and later declared by an entry to be deceased. The court had before him a paper writing, but no information that one of the devisees (not a relative) had pre-deceased the testator.

Counsel for the plaintiff claims, however, citing *Strangward* v. *American Brass Bedstead Company*, 82 Ohio St., 121, that the lapsing of the legacy is "another question which might properly have been litigated in the case."

In 82 Ohio St., a suit for arrearages for rent had been determined once in plaintiff's favor; later in another suit for rent, the defendant sought to show that plaintiff failed to live up to the terms of the lease; the court said that that ground of defense existed, if it ever did exist, at the time of the prior suit, and stated the rule to be as set forth above, namely, that this was "another question which might properly have been litigated in the case involving the arrearages of rent first passed upon."

The second syllabus of the *Strangward* case reads as follows:

"When a matter has been finally determined in an action between the same parties by a competent tribunal, the judgment is conclusive, not only as to what was determined, but also as to every other question which might have properly been litigated in the case."

Counsel for the plaintiff here claims that this is the Ohio rule that governs the instant case.

There seems to us to be an entirely new situation presented in the instant case. It appears that the death of Henry H. Evers prior to testator's death, was not known to counsel for any of the parties to the suit for the construction of the will. The fact therefore, that Evers' devise lapsed was not within their knowledge. The principle here involved is well illustrated by the language of the Supreme Court in *Miller* v. *Brown*, 33 Ohio St., 547, at 554, which concerns the dispute as to a property line. The court says, as to error of the District Court:

"That action was for specific performance under the written contract of 5th October, 1866. But rights in Brown had vested prior to that contract, and no decree upon it could affect their prior rights.

The sole purpose of that decree was that Brown was entitled to a deed for eleven inches and not fifteen. Nothing else was determined. No other rights were in issue. The court did not attempt to settle what rights Brown had in the four inches beyond the eleven. They said he was not entitled to a deed for those four inches, but they did not say he had no interest therein whatever. They did not say that circumstances could not create an easement therein. The decree only settled the rights between the parties as to what portion of the land specified in the contract Brown was entitled to have conveyed to him by Miller.

The court, therefore, were correct in holding that this record did not include or pass on it in the present case."

In *Mahaffy* v. *Rogers et al*, 10 O. C. C., 24, the second syllabus reads as follows:

"Where a plea of *res adjudicata is interposed*, parol evidence is admissible to show the distinctive issue on which a case was tried when the record is silent in this respect."

In the instant case, I understand, it appears that no one considered the question of the lapse of the legacy until Mr. Hunemeyer, who examined the title of the property sought to be conveyed to Henry H. Evers, discovered that the death of Evers occurred prior to that of the testator.

It is clear from the evidence, as well as from the statements of counsel, that the question of the lapsing of the legacy was entirely overlooked in the will construction case.

The leading case in Ohio on the question of *res adjudicata* is *The Lessee of John Lore and others* v. *John Truman*, 10 O. S. R., page 45, the first syllabus of which reads as follows:

"Where, a judgment or decree is relied on by way of evidence, as conclusive *per se,* between the parties in a subsequent suit, it must appear by the record of the former

suit that the particular controversy sought to be precluded was therein necessarily tried and determined."

This statement proceeds from the consideration of the rule as established first in the *Duchess of Kingston* case, 11 State Trials, 291, which is cited with approbation and reads as follows:

"The judgment of a court of concurrent jurisdiction, directly upon the point, is, as a plea in bar or as evidence, conclusive between the same parties, on the same matter, directly in question in another court. But, neither the judgment of a court of concurrent or exclusive jurisdiction is evidence of any matter incidentally cognizable, nor of any matter to be inferred by argument from the judgment."

3 Phillipps' Evidence, 845, is also quoted as containing the proper rule:

"That where a judgment (or decree) is relied on by way of evidence as something conclusive *per se* between the parties, it must appear by the record of the prior suit, that the particular controversy so sought to be precluded was there necessarily tried and determined. In other words, if, in such cases, the former record clearly shows that the judgment to which this effect is ascribed could not have passed without deciding a particular matter, it will be considered as having settled that matter for all future actions; but otherwise not."

See also *Porter* v. *Wagner*, 36 Ohio St., 471.

There is a similar case based upon the doctrine of estoppel which strictly limits the extent of a law suit where a former litigation had been had in connection with the same subject of controversy. The rule is expressed in 18 O. C. C., 158, *Miehle Printing Press Co.* v. *Andrew Jones Printing Co.*, wherein the statement of the law as set forth in the *Duchess of Kingston* case is embodied in syllabus 1.

In the case of *Sauer* v. *Downing*, 109 Ohio St., 120, decided December 18, 1923, the syllabus states that the prior judgment "is not *res judicata* as to that part of the contract which pertains to the operation of the business and the division of profits as to which no issue was made at

the former trial," and in this case the *Loree* case, 10 Ohio St., 45 is cited with approval and followed. See also *Traut* v. *Marvin,* 62 Ohio St., 132.

We therefore hold, in the will construction case, the court cannot be said to have passed necessarily upon the legal effect of a devisee's death prior to the testator's death, when he had before him merely a paper writing, and when neither the court nor counsel were aware that the devisee (not a relative of testator) had died prior to the death of the testator. *So much for the will construction case.*

On September 20, 1929, however one of the Evers' heirs sued to partition all property devised to Evers by the Ryling will; none of the pleadings in the case set forth the date of the death of Henry H. Evers, Charles F. Williams, administrator with the will annexed of Charles H. Ryling, was made party defendant and files a pleading wherein he claims, and undertakes to recover in the case the inheritance tax chargeable against the property sought to be devised to Henry H. Evers by the testator Ryling.

As to this case, it is claimed by plaintiffs herein that there is an identity of parties, and, therefore, the partition case is plead as *res judicata* because said Charles F. Williams, as trustee of the residuary estate, represented the two nieces and one nephew of the testator, who are parties necessarily to the instant suit. The estate of the beneficiaries is a different estate than that of Williams' trustee for the defendants, therefore, the Ryling heirs cannot be said to be bound by the decree for partition in the *Evers'* case, as is claimed by plaintiffs herein. The matter seems to be settled by the early case of *Este & Longworth* v. *Story, et al,* 2 Ohio, 401, wherein the syllabus states:

"The decree in equity against the guardian touching the real estate of his ward, does not effect the ward, unless he is made a party to the original suit."

Charles F. Williams, administrator and trustee is not the same person as the nieces and nephew he represented

as such administrator and trustee; and because as such administrator and trustee, he was a party defendant in the partition case, it cannot be said there was an identity of parties such as to warrant the claim in the instant case of *res judicata.*

We, therefore, hold, as to the partition case, that there was no identity of parties with the parties in the instant case; for that reason, it cannot be pleaded as *res adjudicata.*

This matter comes up on a demurrer to a second amended reply on the part of the plaintiff in a suit which they brought to quiet the title of the property sought to be devised by Ryling to Henry H. Evers. The following statement is made in said second amended reply:

"* * * and after the death of the said testator to the present time the said Louis H. and Ferdinand R. Evers, heirs of the said H. H. Evers, deceased, have collected the rents from the said three houses for the benefit of the said three heirs of Henry H. Evers, deceased, and they have treated the said houses and lots as their own, in part occupying them, making repairs, etc., with the full knowledge and consent of the said testator while he lived, as he desired to reward his faithful bookkeeper while he was living, and his children or heirs after he was dead. * * *"

In this connection, the old but well reasoned case of *Davis' heirs,* v. *Taul,* 6 Dana, Kentucky, Vol. 6-7, page 52, is in point. In speaking of the old rule as to the lapsing of legacy, the court says:

"It is, indeed, a rule of necessity; and merely amounts to this, that if there be no devisee, or legatee, there is, in effect, no devise. The question, therefore, generally is, whether there is any one or more appointed by the will to take, in case of the death of the first devisee, or legatee, in the life of the testator, and whether the person or persons so appointed can, on that contingency, take in the manner intended by the will.

"It has been decided, and seems to be the settled law, that if a devise be to 'A and his heirs,' or a legacy to 'A and his executors,' the addition of the words 'heirs or executors' shows no other intention but that the heirs, or

executors, shall take, by descent or representation, from A; and as this can not be, unless A himself take an interest (which he can not do until the death of the testator) that, if he die before the testator, his heirs, or executors, can never take as such, and that, therefore, the devise or legacy must lapse, because there is not, and can never be, any person to take it under the will.

"In such case, the intention is manifest that A shall take an interest transmissible to his heirs, or executors, and by the death of A that intention is evidently frustrated; but, as no other person is appointed to take, unless A first takes the interest intended for him, there is an end of the devise.

"The question then is, what is the intention of the testator, and has he so manifested that intention as that it may be carried into effect? And this question is to be determined by the language and circumstances apparent on the face of the will. * * * The question is not whether the devise is void by matter subsequent, or unknown to the testator, but whether, upon the face of the will, it is void."

There is nothing on the face of the will in this case, we hold, to indicate that Ryling intended that the property should go to the heirs of Evers in the event Evers died before himself, the testator, and the fact that the heirs of Evers lived, wiuthout paying rent on the property, after the death of their father, Henry H. Evers, is obviously a matter that cannot be gathered from the face of the will.

See also "Commentaries on Wills" Alexander, Vol. II, Sec. 771, Page 1117 and *Comfort* v. *Mather,* 2 Watts and Sergants Reports, 450.

"The legal construction of a will in writing cannot be explained or altered by his (testator) understanding of the meaning of the will, or of his intention to do something else. * * * It is not a case such as the law allows to be controlled by parol evidence. * * * The testatrix knew that the legatee was dead and yet chose to leave the will as it was, to its legal interpretation and consequences, without adopting the measure necessary to effectuate her alleged intentions." *Comfort* v. *Mather,* 2 Watts & S., 450 at 453.

It must be considered that the will was written with reference to the law as to lapse of legacies, and the testator cannot be considered, we hold, in this case, to have intended to give the property to the heirs of Henry H. Evers, because he allowed them to live in it rent free during his lifetime, and after the death of Henry H. Evers. His intention so to do, must be manifested by his will, and if the codicil had been written by him devising the estate formerly given to their father, to the Evers' heirs, it would have been manifest, of course, that such was his intention.

This is a hard case, but we are constrained to hold that there was not an identity of subject matter in the construction of will case, nor identity of parties in the partition case, so as to constitute either case *res adjudicata* in the instant case, and that the permission on the part of the testator Ryling, to the heirs of Henry H. Evers, to live in the property in question rent free during Evers' life, was not an act which legally manifested his desire to obviate the rule as to lapsed legacies so as to write into his will a devise to surviving heirs of a devisee, who died before himself, the testator.

For the reasons above stated, the demurrer to the second amended reply in the above entitled case is sustained.